IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWRENCE HUSICK : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 2:21-cv-5599 |
| : | |
| UNUM LIFE INSURANCE COMPANY OF : | |
| AMERICA. : | |
| : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                              **OCTOBER 11, 2024**

Plaintiff Lawrence Husick's ("Husick") Complaint asserts causes of action for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and bad faith (Count IV).[1] (Complaint, ECF No. 1.) By Stipulation, which the Court has approved, the Parties agreed to the dismissal, with prejudice, of the claim for breach of the implied covenant of good faith and fair dealing (Count II). (ECF No. 57.) Defendant Unum Life Insurance Company of America ("Unum") moves for summary judgment on Plaintiff's remaining claims of breach of contract and bad faith, and Plaintiff moves for summary judgment as to his bad faith claim. For the following reasons, the Parties' motions will be denied.

**I.      BACKGROUND.**

Husick applied for Long-Term Disability Insurance Benefits with Unum in an application dated May 25, 1992. (Pl.'s Statement of Undisputed Facts ("Pl. SOF"), ECF No. 19, ¶ 1; Def.'s Response to Pl.'s Statement of Undisputed Facts ("Def. SOF Response"), ECF No. 23, ¶ 1). Unum

---

[1] Plaintiff's Complaint does not contain a Count III.

issued a private, non-ERISA policy of Long-Term Disability Insurance benefits (the "Policy") to Plaintiff with an effective date of coverage of June 25, 1992.  (Pl. SOF ¶ 2; Def. SOF Response ¶ 2; *see also* Pl. SOF, Ex. B.)

The Policy provides Total Disability benefits or Residual Disability benefits in the event Husick meets either of these terms' respective definitions.  (Def.'s Statement of Undisputed Facts ("Def. SOF"), ECF No. 20, ¶ 2; Pl.'s Response to Def.'s Statement of Undisputed Facts ("Pl. SOF Response"), ECF No. 22, ¶ 2).  Husick suffered a myocardial infarction on January 3, 2019, and filed a related claim for Total Disability benefits on January 19, 2019.  (Def. SOF ¶ 8; Pl. SOF Response ¶ 8.)  Unum paid Husick Total Disability following his myocardial infarction until it terminated these benefits as of June 4, 2020.  (Def. SOF ¶ 52; Pl. SOF Response ¶ 52; *see also* Def. SOF, Ex. 27.)

Even though Husick initially asserted a claim for Total Disability benefits in his Complaint, he has voluntarily dismissed that claim.  (Stipulation and Order, ECF No. 17.)  The remaining issue under the Policy is whether Unum, upon terminating benefits as of June 4, 2020, breached the Policy by failing to continue paying benefits under the Policy's Residual Disability provision.  Under the Policy, Residual Disability is defined as occurring when:

> as a result of the same injury or sickness which caused you to satisfy the Elimination Period[2]: 1.) you experience at least a 20% loss of net income in your regular occupation; and 2.) you are receiving medical care from a physician other than yourself which is appropriate for the injury or sickness.

---

[2] Under the Policy, the Elimination Period is 90 days, which is the number of days "preceding the date benefits become payable […] during which you are totally or residually disabled."  (Pl. SOF, Ex. B at 8; Def. SOF, Ex. 1 at 12.).

2

(Pl. SOF, Ex. B at 8; Def. SOF, Ex. 1 at 12.). With respect to the prong relating to medical care, the Policy further provides, "We will waive this requirement when continued care would be of no benefit to you." *Id.*

Husick asserts that, as a result of his myocardial infarction, he had cognitive issues which persisted following his cardiac rehabilitation and associated medical care and, thus, he continued to satisfy the Policy requirements for Residual Disability even after Unum terminated his benefits. (Pl. Opp. Mem., ECF No. 21-1, at 2-3, 9-10.) (*See id.*) Husick further claims that Unum engaged in bad faith in its review of his claim for benefits. (Pl.'s Motion for Summary Judgment, ECF No. 18.)

On August 15, 2023, Unum filed summary judgment on Husick's two remaining claims: breach of contract and bad faith. (Def. MSJ Brief, ECF No. 20-2.) Unum contends that summary judgment is warranted on the breach of contract claim because there is no genuine issue of material fact that Husick has not satisfied the Policy requirements for Residual Disability. (*Id.* at 1-4.) Specifically, Unum argues that Husick (1) has no ongoing restrictions or limitations in performing the material and substantial duties of his regular occupation; (2) has not received appropriate medical care for his injury or sickness; and (3) has not experienced at least a 20% loss in net income. (*Id.* at 8-13.) As discussed herein, genuine issues of material fact exist regarding each of these three prongs, which precludes granting summary judgment on Husick's breach of contract claim.

In addition, the Parties have also filed cross motions for summary judgment on Husick's bad faith claim. (Def. MSJ Brief at 13-18; Pl. MSJ Mem., ECF No. 18-2). However, the Court finds that genuine issues of material fact also preclude summary judgment for either party on Husick's bad faith claim.

## II.     LEGAL STANDARD.

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party.  *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] factual dispute is material only if it might affect the outcome of the suit under governing law."  *Id*.  The court must view the evidence in the light most favorable to the non-moving party.  *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).  If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . ."); *see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

**III.    DISCUSSION.**

Unum moves for summary judgment on Husick's remaining claims of breach of contract and bad faith, and Husick moves for summary judgment on his bad faith claim. For the following reasons, the Parties' motions are denied in their entirety.

        **A.    Breach of Contract.**

Husick has established genuine issues of material fact as to whether Unum breached the Policy by failing to provide him Residual Disability benefits.

The Parties agree that Pennsylvania law applies. (Def. MSJ Brief at 6-7; Pl. MSJ Mem. at 19.) Under Pennsylvania law, the elements of a breach of contract claim are (i) the existence of a contract; (ii) a breach of a duty imposed by the contract; and (iii) resultant damages. *See Orbisonia-Rockhill Joint Mun. Auth. v. Cromwell Twp.*, 978 A.2d 425, 428 (Pa. Commw. Ct. 2009) ("[A] claim for a breach of contract arises when it can be shown that there was a contract, a breach of a duty imposed by that contract and damages that resulted from the breach.") (citing *Gen. State Auth. v. Coleman Cable & Wire Co.*, 365 A.2d 1347, 1349 (Pa. Commw. Ct. 2009)).

Here, it is undisputed that Unum paid Husick Total Disability benefits under the Policy following his myocardial infarction, and that Unum stopped paying benefits as of June 4, 2020. (Def. SOF at ¶ 52; Pl. SOF Response at ¶ 52; *see also* Def. SOF, Ex. 27.) Husick maintains that he continued to qualify for Residual Disability benefits, which Unum failed to pay. (Pl. Opp. Mem. at 2.) To show eligibility for Residual Disability benefits under the Policy, Husick must demonstrate (1) ongoing restrictions and limitations in performing his occupation as a result of the injury or sickness that initially entitled him to Total Disability benefits; (2) the receipt of medical care from a physician that is appropriate for the injury or sickness, or that Unum waived this requirement; and (3) at least a 20% loss of net income in his regular occupation as a result of the injury or sickness. (*See* Pl. SOF, Ex. B at 8; Def. SOF, Ex. 1 at 12; Def. MSJ Brief at 7.) Husick

has presented sufficient evidence that genuine issues of material fact exist with respect to each of these requirements.

### 1. Ongoing Restrictions and Limitations.

Unum argues that Husick has not produced adequate evidence of ongoing restrictions and limitations in performing his occupation caused by his myocardial infarction. (Def. MSJ Brief at 8-10.) Unum states that "[b]y his own admission, Husick has continued to do nearly all of the material and substantial duties of his occupation" which include "counseling clients; drafting patent applications; reviewing technical documents . . . participating in settlement negotiations; issuing reports and advisement letters to clients; marketing for his firm; and serving as managing partner of his firm." (*Id.* at 8.) Unum further argues that Husick has not produced any evidence to show that his capacity to perform his work has diminished in comparison to the period before his myocardial infarction. (*Id.* at 8-10.)

Husick argues that, following Unum's termination of benefits, he continued to struggle with cognitive deficits, which included an inability to concentrate for extended periods of time and associated fatigue. (Pl. Opp. Mem. at 9-10.) In support, Husick cites his own declaration (ECF No. 21-3) and deposition testimony (*see* ECF Nos. 21-7 and 21-8), as well as excerpts of letters from medical providers Dr. Richard Tucci and Dr. Joely Esposito. (*See* ECF 19-1, 101-102 (July 7, 2020 letter from Dr. Richard Tucci stating that "[t]he biggest issue remains his cognitive function. He still needs a nap every day as he gets very fatigued. . . . All this seems to be consistent with anoxic brain injury from his myocardial infarction."); *id.* at 124 (August 14, 2021 letter from Dr. Esposito stating that "[a]lthough none of his scores on cognitive tests were actually in the impaired range, he did demonstrate relative weaknesses in visual processing speed, visual memory,

mental multitasking, incidental spatial recall, and novel abstract reasoning. . . . It is likely that these cognitive weaknesses are residual effects of [his myocardial infarction].").

To summarize, Husick argues that he has struggled to concentrate for extended periods of time and experienced poor memory and fatigue since his myocardial infarction. (Pl. Opp. Mem. at 9-10.) A factfinder could determine that, even if Husick could perform the individual tasks Unum references, Husick still had restrictions and limitations when performing these tasks in succession or for extended periods due to issues with fatigue and concentration deficits resulting from the myocardial infarction.

### 2. Receipt of Medical Care Appropriate for Injury or Illness.

Unum argues that, despite multiple doctors recommending that Husick undergo neuropsychological testing and cognitive rehabilitation, Husick did not take proactive measures for such testing and rehabilitation, and therefore did not satisfy the requirement that he receive appropriate medical care. (*See* Def. MSJ Brief at 10-12.) Unum further argues that Husick had not been treated by a neurologist or any physician to address his ongoing cognitive complaints. *Id.*

Husick points to contrary evidence. Specifically, Husick argues that his cardiologist, Dr. Tucci, "expressed that his fatigue and concentration may be restored over time[]" and for this reason he "waited patiently for his cognition to improve." (Pl. SOF Response at ¶ 27.) Husick also notes that he underwent formal testing with Dr. Joely Esposito, and he references testimony from Dr. Mijail Serruya that he would not likely experience benefits from cognitive rehabilitation. (*See id.*; Pl. SOF, Ex. A at 116-125; Def. SOF, Ex. 42, Dr. Serruya Dep. at 89:8-13.)

Although Husick may not have promptly addressed his cognitive deficits, assessing whether his medical care (or lack thereof) was "appropriate" under the circumstances requires

7

weighing evidence and making credibility determinations, which is not appropriate at summary judgment.

### 3. At Least A 20% Loss of Net Income.

Third, Husick must show at least a 20% loss of net income in his regular occupation because of the same injury or sickness that initially entitled him to benefits. Unum argues that Husick's evidence of lost income is "inherently unreliable" and that Husick failed to produce timely evidence of lost monthly earnings or expenses. (Def. MSJ Reply, ECF No. 25, 2). Unum further contends that the annual Schedule C forms Husick produced "do not provide any insight into specific months for which Plaintiff claims residual benefits," and that dividing this annual amount by 12 to identify monthly net income would present too rough an approximation. (Def. MSJ Brief at 12-13.) In response, Husick refers to his own testimony and the May 16, 2023 expert report of Sean C. Hanahue, which includes an assessment of Husick's earnings.[3] (*See* Pl. Opp. Mem. at 20-21.) Drawing all inferences in the light most favorable to the non-moving party, Husick has presented adequate evidence to establish a genuine issue of material fact regarding whether he experienced a 20% loss of income.

### B.   The Parties' Cross Motions for Summary Judgment Regarding Husick's Bad Faith Claims Are Denied.

Under Pennsylvania law, an insurer acts in bad faith if it had no reasonable basis for denying benefits under the policy, and it knew or recklessly disregarded the lack of reasonable basis for denying the claim. *Klinger v. State Farm Mut. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997) (applying Pennsylvania law). Bad faith consists of a frivolous or unfounded refusal to pay, lack

---

[3] Mr. Hanahue's report also stated: "It is my opinion that reasonable minds can agree that Attorney Lawrence Husick has experienced a reduction of more than 20% of his net income in 2017 and 2018 work years as compared to his net income in the post heart attack years of 2019, 2020 and 2021." (*See* Hanahue Report, ECF No. 21-5, at 19.)

of investigation into the facts, or a failure to communicate with the insured.  C*oyne v. Allstate Ins. Co.*, 771 F. Supp. 673, 678 (E.D. Pa. 1991).  Husick has the burden of establishing bad faith by "clear and convincing" evidence.  *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004).  Incorrectly denying coverage does not, on its own, constitute bad faith.  *See id.* (affirming summary judgment in favor of insurer on bad faith despite possibility that some of insurer's conduct created "an appearance of bad faith").

Husick argues that he is entitled to summary judgment on bad faith because Unum failed to "conduct a thorough investigation of this Long[-]Term Disability Insurance claim" and "operated under [] self-interest by simply adopting the opinions of the doctors Unum hired." (*See* Pl. MSJ Mem. at 19.)  Specifically, Husick argues that Unum's investigation was insufficient and violated its own policies and procedures because the doctors who reviewed his claim "never examined Husick and expressed only that they did not have sufficient testing to quantify Husick's fatigue and his inability to concentrate[]." (*See id.* at 19, 33.)

Unum contends that summary judgment should be granted in its favor because it afforded Husick "a full and fair review" of his claim, and "paid the claim for over a year while a physician certified restrictions and limitations." (Def. MSJ Brief at 17.)  Unum further argues that it "repeatedly invited and evaluated Husick's treatment records via multiple board-certified physicians and a vocational rehabilitation consultant[,]" and notes that these "examiners found that Husick's medical treatment did not corroborate the symptoms of which he was complaining[.]" (*Id.*)

In short, the Parties offer significantly contrasting versions of events regarding Unum's review of Husick's claim.  The Court may not resolve these material factual disputes on summary

9

judgment. The Parties' Cross Motions for Summary Judgment on Plaintiff's bad faith claim will be denied.

## IV. CONCLUSION.

For the foregoing reasons discussed herein, the Parties' summary judgment motions are denied in their entirety. An appropriate order follows.

BY THE COURT:

*/s/ R. Barclay Surrick*

**R. BARCLAY SURRICK, J.**