## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE HUSICK | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 21-cv-5599 |
| UNUM LIFE INSURANCE CO. OF | : | |
| AMERICA | : | |

## <u>MEMORANDUM ORDER</u>

**AND NOW**, this _21st_ day of <u>November</u>, 2025, upon consideration of the parties' motions *in limine* listed below, and all documents submitted in support thereof and in opposition thereto, it is **ORDERED** as follows:

1. Plaintiff's Motion *in Limine* Seeking to Preclude the Admission of the Opinions of Kathleen Hancock, RN, Dr. Judith Cohen, Dr. Joseph Palermo and Dr. Peter Brown into Evidence (ECF No. 67) is **DENIED**. Plaintiff Lawrence Husick ("Plaintiff" or "Husick") does not seek to preclude the opinions of these medical professionals entirely, but, rather, to bar Defendant Unum Life Insurance Company of America ("Defendant" or "Unum") from using these experts' reports to prove the truth of the matters asserted therein (theoretically, Plaintiff's alleged lack of disability). As Plaintiff acknowledges, "[e]vidence should not be excluded pursuant to a motion in limine, unless it is clearly inadmissible on all potential grounds." *Seawright v. Banning*, 677 F. Supp. 3d 310, 313 (E.D. Pa. 2023) (quoting *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)). (*See also* Pl.'s Mem., ECF No. 67-1, at 13 (citing *Leonard*, 981 F. Supp. 2d at 276).) Since Plaintiff concedes that the evidence at issue is relevant in certain respects, his motion to preclude such evidence for other purposes is premature. Objections as to the use of such evidence will be considered at trial.

2.  Plaintiff's Motion *in Limine* Seeking to Limit Defendant's Defense to Plaintiff's Claim for Residual Disability Benefits to the Basis Articulated in its Denial Letters (ECF No. 68) is **DENIED**.  In his motion, Plaintiff argues that because Unum never requested any financial information from Plaintiff when it was considering his claim and instead based its denial on a purported lack of medical evidence of physical or cognitive limitations, Defendant should be precluded from defending its coverage denial at trial with evidence or argument that Plaintiff did not sustain sufficient income loss to be financially eligible for residual disability benefits.  Plaintiff bases this argument on two related legal theories—equitable estoppel and the "mend the hold" doctrine—both of which are inapplicable to the present facts and circumstances.

"[T]he elements of equitable estoppel are (1) an inducement, whether by act, representation, or silence when one ought to speak, that causes one to believe the existence of certain facts; (2) justifiable reliance on that inducement; and (3) prejudice to the one who relies if the inducer is permitted to deny the existence of such facts."  *Firemen's Ins. Co. of Washington, D.C. v. Tray-Pak Corp.*, 130 F. Supp. 3d 973, 984 (E.D. Pa. 2015) (quoting *Chem. Bank v. Dippolito,* 897 F. Supp. 221, 224 (E.D. Pa. 1995) (citing *Zivari v. Willis,* 611 A.2d 293, 295 (Pa. Super. Ct. 1992))).  "It is well-established under Pennsylvania law that the burden rests on the party asserting estoppel to establish the defense by clear, precise and unequivocal evidence."  *Chrysler Credit Corp. v. First Nat. Bank & Trust Co. of Washington*, 746 F.2d 200, 206 (3d Cir. 1984) (citing *Blofsen v. Cutaiar*, 333 A.2d 841, 844 (Pa. 1975)).  The "mend the hold" doctrine instructs that "[w]here a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration."  *Ohio & Miss. Ry. Co. v. McCarthy*, 96 U.S. 258, 267 (1877).  Although more quaintly named, the "mend the hold" doctrine is essentially a

form of estoppel, requiring the party asserting the doctrine to "demonstrate prejudice that resulted from Defendant's change of position." *See Easy Corner, Inc. v. State Nat'l Ins. Co., Inc.*, 154 F. Supp. 3d 151, 154 n.3 (E.D. Pa. 2016) (noting that Plaintiff's assertion of "mend the hold" doctrine was "an estoppel argument" requiring demonstration of prejudice resulting from change in the basis for insurer's coverage denial); *Rock-Epstein v. Allstate Ins. Co.*, No. 07-2917, 2008 WL 4425059, at *4 (E.D. Pa. Sept. 29, 2008) (holding that "mend the hold" doctrine did not bar insurer from asserting coverage defenses not included in denial letter, "particularly because Plaintiff cannot show prejudice or even surprise from [insurer's] defenses"). Although it largely skirts analysis of the foregoing legal elements, Plaintiff's argument as to both his equitable estoppel and "mend the hold" theories seems to be that Unum's failure to undertake financial calculations during the claim-assessment process or to mention income in its denial letter induced Plaintiff to believe that this breach of contract action would involve only a dispute over his medical condition, which prejudiced Plaintiff by leading him to omit from evidence certain financial information and analyses relevant to his claims. However, Plaintiff offers no facts suggesting that Unum intended such an inducement or explaining how reliance thereon could be justifiable, nor does he offer any rule or principle under Pennsylvania law requiring an insurer to provide all bases for a claim rejection in its denial letter. Moreover, courts in this District applying Pennsylvania law have held that "in the context of an insurer's failure to assert all possible defenses to coverage, the courts apply an estoppel only when there is actual prejudice, that is, when the failure to assert all possible defenses causes the insured to act to his detriment in reliance thereon." *Mendel v. Home Ins. Co.*, 806 F. Supp. 1206, 1215 (E.D. Pa. 1992); *see also Easy Corner, Inc.*, 154 F. Supp. 3d at 154 n.3. Regardless of the reasons for Defendant's denial, the burden is on Plaintiff to establish the elements of his breach of contract claim, and the fact that Defendant did not perform the calculations

necessary to substantiate damages does not justify Husick's failure to collect and produce relevant financial information during discovery. Since Plaintiff has not shown inducement, justifiable reliance, or resulting prejudice, neither equitable estoppel nor the "mend the hold" doctrine applies. Unum's defense will not be limited to the basis articulated in its denial letters.

3.   Plaintiff's Motion *in Limine* Seeking to Exclude All Evidence Concerning the Plaintiff's Income from Sources Not Covered Under the Policy of Insurance (ECF No. 69) is **GRANTED IN PART**, with respect to the specific amounts of supplementary income earned by Plaintiff, and **DENIED IN PART**, with respect to descriptions of his alternative income sources. We agree with Plaintiff that the probative value of discrete income amounts received by Plaintiff from sources outside of his regular occupation is outweighed by a substantial risk of unfair prejudice under Federal Rule of Evidence 403, as Plaintiff's apparent wealth could affect a jury's willingness to grant him a monetary award for any reduction in his still substantial income. As such, Unum is precluded from introducing evidence of specific income amounts received by Plaintiff from sources outside of his regular occupation. However, Plaintiff's Proposed Order (ECF No. 69-2) asks for more than this. Specifically, Plaintiff requests that Defendant be precluded "from entering into evidence *any evidence* concerning the Plaintiff's *sources* of income; other than, from his regular occupation." (*Id.* (emphasis added).) However, general information regarding Plaintiff's range of activities both before and after his heart attack is relevant to a jury's assessment of Plaintiff's eligibility for residual disability payments and does not present a significant risk of unfair prejudice. Defendant may introduce evidence of Plaintiff's professional endeavors generally, without reference to the income amounts he received for endeavors beyond his regular occupation.

4.  Defendant's Motion *in Limine* to Preclude Reference to a Speculative Hypoxic or Anoxic Brain Injury and History of Cavernomas (ECF No. 70) is **DENIED**.  Defendant argues that Plaintiff should be precluded from introducing evidence suggesting that he suffered a hypoxic or anoxic brain injury because there is no clinical evidence demonstrating the injury and no medical expert has opined with any degree of medical certainty that Plaintiff suffered such injury.  In response, Plaintiff argues that his medical records do, in fact, indicate that he experienced an extended period of hypotension while in the hospital; that his cardiologist, Dr. Richard Tucci, believed he had suffered an anoxic brain injury; and that a medical expert, Dr. Mijail Serruya, has opined that Plaintiff "suffered a permanent neurometabolic insult due to the myocardial infarction and the immediate sequelae, in particular the prolonged hypotension and invasive aortic interventions." (Pl. Opp'n Mem., ECF No. 42-2, at 2–4.)  Defendant's arguments are inadequate at this stage of the proceeding to bar Plaintiff from introducing *any* mention of potential brain injury resulting from effects of the myocardial infarction.  While it is true that Pennsylvania law requires experts to testify with a reasonable degree of medical certainty when they provide an opinion on causation, *see In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749–52 (3d Cir. 1994), the testimony at issue is not a conclusion regarding causation but, rather, Dr. Serruya's assessment based on his own examination of Plaintiff, his review of Plaintiff's medical history (including both clinical tests and imaging and the examination notes of other medical professionals), and various cited scientific studies and academic articles.  Although Plaintiff's medical records do not reflect a definitive diagnosis of hypoxic or anoxic brain injury, categorically precluding any mention of a potential brain injury resulting from limited blood flow to Plaintiff's brain would be impractical and unduly prejudicial where the degree to which Plaintiff's brain might have been impacted by his myocardial infarction is a key area of dispute.  Defendant's contention that Dr. Serruya's report

does no more than conclude "that absence of the proof of any such injury does not mean it did not occur" (Def. Mem., ECF No. 70-1, at 7) is misleading.  Defendant's argument focuses on specific passages in Dr. Serruya's report reacting to conclusions of Unum's experts, which themselves were based on an absence of specific data.  As described above, Dr. Serruya's findings regarding the neurological impacts of Plaintiff's myocardial infarction appear to rely on proper bases of expert testimony under Federal Rules of Evidence 702 and 703, including a personal examination, review of imaging and test results, and peer-reviewed studies.  Plaintiff will not be barred from referencing the particular types of injury addressed by the expert testimony of both parties.

Separately, Defendant's motion contends that Plaintiff should be precluded from mentioning his documented medical history of cavernomas "[b]ecause there is no medical evidence that Plaintiff's history of cavernomas is causative of his alleged cognitive impairments" and because no medical testing indicated that there was any change in the cavernomas as a result of the myocardial infarction.  (Def. Mem. at 8.)  Plaintiff did not respond to Defendant's motion with respect to cavernomas.  Defendant's argument that evidence of Plaintiff's cavernomas would be highly prejudicial is initially somewhat puzzling, since evidence suggesting that Plaintiff's alleged impairments might be caused by a preexisting condition (rather than the same injury or sickness which qualified Plaintiff for disability benefits initially) would seemingly be favorable to the defense.  Defendant's concern appears to stem from Dr. Serruya's expert report, which opines that the preexisting cavernomas put Plaintiff at greater risk of negative effects following a myocardial infarction.  (*See* Pl. Opp'n Mem. at 3.)  Defendant contends that Dr. Serruya engaged in inadmissible speculation by suggesting in his report that the absence of imaging showing any post-heart attack change to the cavernomas does not indicate that they are not impacting Plaintiff's recovery.  As with Dr. Serruya's commentary regarding potential brain injury, Unum's argument

isolates a specific aspect of Dr. Serruya's report explaining that medical imaging does not illustrate a particular biological process or effect. This observation does not make Plaintiff's medical history irrelevant. Undisputed evidence of Plaintiff's physical condition prior to the myocardial infarction is plainly a relevant consideration in determining the injury's effects and is not unfairly prejudicial.

5. Defendant's Motion *in Limine* to Limit the Testimony of Mijail Serruya, M.D. (ECF No. 71) is **GRANTED IN PART**, with respect to conclusions specifically regarding Plaintiff's ability to function as a patent attorney, and **DENIED IN PART**, with respect to conclusions about Plaintiff's ability to perform various types of cognitive tasks.[1] Defendant argues that Dr. Serruya should not be permitted to opine about Plaintiff's occupational capacity because he is not qualified as a vocational expert. Defendant notes that, in the first of his two reports, Dr. Serruya opined not only as to Plaintiff's neurological condition, but also as to the implications of his neurological test results for his ability to perform the occupation of a patent attorney. However, in his second report, Dr. Serruya explicitly stated that he is not a vocational expert and is not able to assess a person's ability to function as a patent attorney. Defendant argues that allowing Dr. Serruya to testify regarding Plaintiff's ability to perform the duties of his occupation would mislead the jury because the jury may give the doctor's occupation-related conclusions the same weight as his medical testimony. Plaintiff acknowledges that Dr. Serruya is not a vocational expert but contends that, as

---

[1] Defendant also separately argues that, because Plaintiff has not offered Dr. Serruya as a fact witness, his testimony should be limited to his medical examination of Plaintiff in October 2022 and should not be based on the doctor's previous personal interactions with Plaintiff, who has represented Dr. Serruya in patent law matters and remained his professional contact over the years, with the two even co-founding a company together. However, Plaintiff has since submitted a witness list that identifies Dr. Serruya as both a fact and an expert witness. Although Defendant raises a valid concern that Dr. Serruya's fact testimony based on his personal interactions with Plaintiff may be misperceived by the jury as expert opinion, this risk can be mitigated at trial by separating the doctor's expert testimony from his examination as a fact wtiness and/or by appropriate instructions to the jury. In addition, Defendant's proposed order submitted in connection with this motion *in limine* does not address this issue. Accordingly, we defer to a later date the question of how Dr. Serruya's dual testimony should be presented at trial.

a physician in the field of neurology, Dr. Serruya is qualified to render a general opinion regarding Plaintiff's cognitive function, including his ability to perform the customary responsibilities of a patent attorney as described in an authoritative resource on occupational roles.  Plaintiff notes that, in evaluating his claim, Unum employed its own medical expert who similarly utilized a general description of the duties of a patent attorney in connection with his medical assessment of Plaintiff's ability to fulfill such duties.  Plaintiff argues that Dr. Serruya is simply rendering an opinion on the same core medical issue.  Although it is reasonable for Dr. Serruya to consider the general responsibilities of a patent attorney in his assessment of Plaintiff's cognitive capabilities, we agree with Defendant that Dr. Serruya's initial report treads too far into the realm of vocational expertise.  Dr. Serruya's October 2022 report includes assertions that: (1) "[Plaintiff's] inability to achieve the processing speed, attention, and multi-tasking he had prior to the myocardial infarction, render him unable to perform all the functions required of a patent attorney."; (2) "Validated testing demonstrated [Plaintiff's] attention, visual scanning and processing speed are average, and a person with average abilities cannot perform the occupation of patent attorney."; and (3) "[Defense expert's] statement of the occupational requirements of a patent attorney are incomplete to the point of being intentionally inaccurate, revealing a lack of knowledge necessary to have competently conducted the review and undermining the opinion expressed."  (*See* Serruya Oct. 21, 2022 Expert Report, ECF No. 71-7, at 11, 12.)  Each of these statements purports to reflect a level of expertise in the requirements of patent attorney practice that Dr. Serruya concedes he does not possess and is unqualified to offer at trial.  However, that is not to say that Dr. Serruya must be qualified as a vocational expert to offer his medical opinion regarding Husick's cognitive abilities, including in particular contexts such as an occupational role.  At trial, Dr. Serruya will be permitted to provide his medical opinion on whether Plaintiff's ability to undertake generic

activities, including those specifically listed in an accepted definition of the role of a patent attorney, was likely to be impacted by his cognitive state, but he will be precluded from testifying as to his understanding of the responsibilities of a patent attorney and from making assertions about the specific demands of the role or Plaintiff's overall ability to perform in such a role.

6.    Defendant's Motion *in Limine* to Preclude Plaintiff from Presenting a Calculation for Residual Disability (ECF No. 72) is **GRANTED IN PART**, with respect to the income-related conclusions in the report of vocational expert Sean Hanahue, and **DENIED IN PART**, with respect to simple mathematical calculations to be drawn from otherwise admissible evidence. To be admissible, expert testimony must be, among other things, "the product of reliable principles and methods." Fed. R. Evid. 702. Here, Plaintiff's vocational expert's opinions regarding Plaintiff's net income losses do not meet the reliability requirement. "Loss of net income" is a term defined by the contract at issue and is determined with regard to Plaintiff's "prior net income," itself a defined term that hinges on Plaintiff's average monthly income. Plaintiff's vocational expert, Mr. Hanahue, did not consider Plaintiff's monthly income in forming his opinions regarding Plaintiff's net income losses. Instead, he appears to have relied only on Plaintiff's annual Schedule C tax returns, which do not supply the monthly income and expense information needed to determine "loss of net income" under the contract. Moreover, it is not clear that Mr. Hanahue used any discernible methodology to reach his conclusion about Plaintiff's "loss of net income" as that phrase is defined in the contract. In sum, "there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Mr. Hanahue is therefore precluded from offering his opinion regarding Plaintiff's loss of net income.

The motion is denied in all other respects.  The Court will not preclude Plaintiff from attempting to calculate a residual disability benefit at trial using admissible evidence consistent with this Order.

7.  Defendant's Motion *in Limine* to Limit the Testimony of Joely Esposito, Ph.D. (ECF No. 73) is **DISMISSED AS MOOT**.  The parties agreed during oral argument that Plaintiff does not intend to present Dr. Esposito as a witness.

8.  Defendant's Motion *in Limine* to Preclude Plaintiff's Untimely and Prejudicial Declaration and Financial Documents (ECF No. 74) is **GRANTED**.  Discovery in this matter closed on July 18, 2023.  Two months later—on September 18, 2023—Plaintiff submitted a Declaration with exhibits as part of his response to Defendant's then-pending motion for summary judgment.  (*See* ECF No. 21-3.)  The exhibits include a spreadsheet prepared by Plaintiff, along with monthly bank statements, none of which were produced during discovery.  Defendant argues that permitting Plaintiff to use these documents at trial would be unfairly prejudicial, given their untimely disclosure, and potentially misleading to the jury, given the unclear origin of the spreadsheet data and the absence of comprehensible descriptions of transactions on the bank statement entries.  In response, Plaintiff contends that (i) Defendant's discovery requests did not specifically seek the detailed monthly information contained in the spreadsheet and bank statements, and (ii) Unum cannot claim to be prejudiced given that Plaintiff's counsel emailed these documents to Defendant's counsel on August 29, 2023, four months before Defendant filed its motion *in limine*, and Defendant "has done nothing with [them]."  (Pl. Opp'n Mem., ECF No. 40, at 6–9.)

Under Federal Rule of Civil Procedure 26(a), "a party must, without awaiting a discovery request, provide to the other parties: . . . (ii) a copy—or a description by category and

location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment; [and] . . . (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . . ."  Fed. R. Civ. P. 26(a)(1)(A).  Rule 26 further provides that a party who has made an initial disclosure under Rule 26(a) must supplement or correct its disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  Under this Court's then-operative scheduling order, discovery was to be completed "no later than July 18, 2023."  (ECF No. 14.)

Plaintiff should have produced the spreadsheet and bank statements during discovery, either to supplement his Rule 26(a) Initial Disclosures, or in response to Defendant's document requests, which included a request for "[a]ny and all documents evidencing income earned by [Plaintiff] . . . ."  (ECF No. 74-5, at 7.)  The spreadsheet—titled "Husick Income (June 2020 - Present)"—and the bank statements on which it is based, are documents evidencing income, and Plaintiff seeks to use them to prove his case.  The documents are also relevant to Plaintiff's claimed damages with respect to his breach of contract claim.  The Court agrees that Defendant would be severely prejudiced by their admission at trial given that Defendant did not have the opportunity to depose Plaintiff on these documents during discovery and Defendant's expert was unable to consider them.  Moreover, Plaintiff offers no justification for his failure to produce these

documents during discovery beyond his contention that Defendant's discovery requests did not ask for them. Even if Unum's discovery requests could be read as not encompassing the spreadsheet and bank statements, Plaintiff should have produced them in connection with his Initial Disclosures, which he was required to timely supplement. His failure to do so prejudices Defendant and precludes Plaintiff from using the spreadsheet and bank statements at trial. Fed. R. Civ. P. 37(c)(1).

In addition, Plaintiff's argument that Defendant "has done nothing with" the documents besides filing a motion *in limine* seeking to exclude them misses the mark. (*See* Pl. Opp'n Mem. at 8–9.) Plaintiff does not explain what Defendant was purportedly obligated to do with respect to the belatedly disclosed documents. By the time the documents were provided to Defendant, both fact and expert discovery had been closed for over a month. Plaintiff did not file a motion to admit the documents despite their untimely disclosure or to reopen discovery. While Unum could have filed a motion to reopen discovery to retake depositions with respect to the new documents, it was not required to do so, and to conclude otherwise would effectively shift Plaintiff's Rule 26 and discovery obligations onto Defendant. *See*, *e.g.*, *Buffington v. Nestle Healthcare Nutrition Inc.*, No. 18-106, 2019 WL 6646703, at *3 (C.D. Cal. Sept. 24, 2019) (preventing plaintiff from presenting evidence of lost earnings because, despite disclosing a number, she did not disclose support for her computation, and it was not defendant's duty to track down that support); *Sanguinetti v. Rambo*sk, No. 21-529, 2024 WL 167265, at *2 (M.D. Fla. Jan. 16, 2024) ("It was Plaintiff's burden to ensure compliance with Rule 26. Having failed to do so, he cannot shift the blame to Defendants."); *Dayton Valley Invs., LLC v. Union Pac. R. Co.*, No. 08-127, 2010 WL 3829219, at *4 (D. Nev. Sept. 24, 2010) (rejecting argument that failure to comply with disclosure obligations was harmless where opposing party did not conduct discovery on the issue).

9.    Defendant's Motion *in Limine* to Preclude Evidence of Defendant's Gross Profits and/or Executive Compensation (ECF No. 76) is **GRANTED IN PART**, with respect to the introduction of such evidence during consideration of Defendant's liability for breach of contract and bad faith, and **DENIED IN PART**, to the extent that the issue of punitive damages comes before the jury.    Taking a cue from Plaintiff's requests for information regarding Unum's gross profits and the total pay package of its CEO during discovery, Defendant asks that the Court prevent Plaintiff from presenting its gross profits and CEO pay to the jury at trial, arguing that evidence of corporate affluence has no probative value in this case but is likely to prejudice a jury against the insurer.    In response, Plaintiff argues that case law establishes that information regarding a defendant's net worth is relevant to the calculation of punitive damages, which Plaintiff seeks in connection with his bad faith claim.    However, the cases cited by Plaintiff all pertain to the discovery of financial information rather than its admissibility at trial.    Although it is true that "[a] company's wealth may be considered in determining punitive damages," it is not uncommon for courts to restrict the introduction of such information until a later stage of proceedings given the substantial risk of prejudice.    *See Pennsylvania Tr. Co. v. Dorel Juv. Grp., Inc.*, 851 F. Supp. 2d 831, 848 (E.D. Pa. 2011) (admitting evidence of defendant's assets in products liability action but noting that, "if appropriate at trial, the Court may exercise its discretion to bifurcate the trial to allow for a separate punitive damages phase"); *Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 254–56 (W.D. Pa. 2012) (granting in part and denying in part defendant insurer's motion *in limine* to exclude evidence of insurer's net worth, holding that the probative value of such evidence would be substantially outweighed by a danger of unfair prejudice if the evidence were introduced before the plaintiff had presented sufficient evidence to sustain claim for punitive damages); *Lopez by Ilarrava v. CSX Transp., Inc.*, No. 14-257, 2021 WL 2810117, at *8–9 (W.D. Pa. July 6, 2021)

(reserving ruling on whether jury may be charged as to punitive damages until the end of trial and noting that the plaintiff may introduce evidence of the defendant's wealth at that time if appropriate); *Hanna v. Giant Eagle Inc.*, No. 15-1009, 2018 WL 11474894, at *5 (W.D. Pa. Mar. 28, 2018) (bifurcating the issue of liability for employment discrimination from the issue of punitive damages and holding that evidence of the defendant's net worth would be admissible during the second stage of trial).  The Third Circuit Court of Appeals has held that it is not an abuse of discretion for a trial court to bifurcate the question of liability for punitive damages from the amount of punitive damages where a court is "understandably concerned that the jury's knowledge of the defendant's net worth might influence its assessment of compensatory damages." *See McCann v. Miller*, 502 F. App'x. 163, 171 (3d Cir. 2012).  Here, we find that evidence of Defendant's net worth has little to no probative value with respect to Plaintiff's claims but presents a substantial likelihood of prejudice.  Accordingly, such evidence will not be admitted unless and until Plaintiff has adequately substantiated his bad faith claim at trial.

10. Defendant's Motion *in Limine* to Preclude Evidence of a Purported Work Review Requirement (ECF No. 77) is **DENIED**.  In this motion, Defendant requests that the Court preclude Plaintiff from mentioning, suggesting, or eliciting testimony from any witnesses suggesting that after the myocardial infarction, Plaintiff's work as a patent attorney was required to be reviewed by his law firm colleagues before being sent to clients or other parties.  Defendant argues that because Plaintiff's law partners indicated during their depositions that they were not aware of a strict requirement that all of Plaintiff's work should be checked, allowing Plaintiff to present evidence alluding to such a policy would mislead the jury by inaccurately suggesting that Plaintiff was unable to work independently as a patent attorney following his heart attack.  However, other portions of Plaintiff's colleagues' depositions discuss their review of some of

Plaintiff's work and related concerns, and Plaintiff maintains that the work-review requirement was a self-instituted policy that constituted a formal requirement because of his position of authority within his law firm.  This is seemingly the evidence that Defendant seeks to preclude. Unfortunately for Defendant, evidence is not unfairly prejudicial simply because it runs contrary to one party's interpretation of events.  There appears to be a factual dispute as to the existence of a work-review requirement, and both parties are entitled to elicit—and to challenge—witness testimony on this topic, so that the jury may determine which side's characterization of the facts prevails.

**IT IS SO ORDERED.**

**BY THE COURT:**

 */s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**